IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ASHLEY SCHANZ, and | : | |
| SEBASTIAN SCHANZ, | : | |
| | : | |
|     Plaintiff, | : | |
| | : | Civil Action File No. |
| v. | : | |
| | : | _____ |
| T-MOBILE USA, INC., | : | |
| a Delaware corporation, | : | |
| | : | **Jury Trial Demanded** |
|     Defendant. | : | |
| _____ | : | |

## <u>COMPLAINT</u>

### INTRODUCTION

1.     This action arises out of Defendant T-MOBILE USA, INC.'s ("T-Mobile") transfer of Plaintiffs' cellular telephone number to a third-party's device via SIM Swap without permission or authorization of Plaintiffs, thereby allowing such third-party access to protected and confidential information, including but not limited to telephone calls and text messages ultimately used by such third-party to unlawfully access Plaintiffs' financial accounts and convert funds in excess of $50,000.

2.     Plaintiffs bring this action pursuant to 47 U.S.C. § 206 of the Communications Act for T-Mobile's failure to engage in reasonable practices in

the provision of communications services, in violation of 47 U.S.C. § 201(b), and T-Mobile's failure to protect customer proprietary network information, in violation of 47 U.S.C. § 222(b).

3.     In addition, Plaintiffs allege herein that Defendant's conduct in facilitating the SIM Swap and accessing and directing communications intended for Plaintiffs to a third party without authorization violated the Computer Fraud & Abuse Act, 18 U.S.C. § 1030, and Georgia's Identity Fraud Act, OCGA §§ 120 through 132.

4.     Plaintiffs also assert common law claims for negligence, including negligence in the facilitation of the SIM Swap as well as negligence in the hiring, retention, and/or training of the employee(s) who facilitated the SIM Swap.

## PARTIES, PERSONAL JURISDICTION, AND VENUE

5.     Plaintiffs are natural persons who are residents of the Northern District of Georgia and are authorized by law to bring this action.

6.     T-Mobile is a corporation formed in the State of Delaware with its principal place of business in the State of Washington.

7.     T-Mobile is subject to the general jurisdiction of this Court because it has registered with the Secretary of State to transact business in this State and maintains a permanent registered agent for service of process in this State.

8.      Venue is proper because T-Mobile's maintains its registered office in this District and Division.

9.      T-Mobile is subject to the jurisdiction and venue of this Court.

10.     Other defendants may be discovered in the course of litigation. As such, Plaintiffs respectfully request that this Court permit the addition of later discovered Defendants upon motion.

## STATEMENT OF FACTS

11.     Plaintiffs are subscribers to a family T-Mobile cellular telephone plan.

12.     On February 9, 2023, T-Mobile swapped Plaintiff Sebastian Schanz' SIM for his cellular telephone number to the SIM of a third-party fraudster.

13.     The February 9, 2023 SIM Swap was not the first time that T-Mobile facilitated an unauthorized SIM Swap with respect to the Plaintiffs' accounts.

14.     After the first unauthorized SIM Swap, the Plaintiffs requested that T-Mobile not authorize any SIM Swaps with respect to the Plaintiffs' accounts unless the Plaintiffs were present, in person, at a store with proper identification to facilitate the Swap.

15.     Despite such request, T-Mobile authorized the February 9, 2023 SIM Swap without either of Plaintiffs' authorization or consent.

16.     As a result of the SIM Swap, the fraudster was able to access

communications intended for Plaintiffs, including security communications from Bank of America, which were used by the fraudster to unlawfully access Plaintiffs' joint Bank of America account and obtain a virtual card number used to transfer in excess of $50,000 from Plaintiffs' accounts to the Fan Duel account of the third party.

17.     As a result of this fraud, several of Plaintiffs' legitimate transactions, including payments to various creditors, were returned insufficient, leading to penalties and interest.

18.     As a result of this fraud, Plaintiffs suffered severe worry, distress, confusion, and marital instability while trying to undo the damages caused by the unauthorized SIM Swaps and recover the lost funds.

19.     T-Mobile is well aware of the dangers of SIM Swaps. It has been sued on numerous occasions for permitting unauthorized SIM Swaps, and it has been an active participant in the Federal Communications Commission's ongoing proceedings with respect to SIM Swaps and related Port Out Fraud.

20.     Despite clear knowledge of the harm of SIM Swaps, and direct request from Plaintiffs that T-Mobile not authorize any SIM Swap on their accounts unless done in person with proper identification, T-Mobile permitted the fraudster to takeover Plaintiffs' cellular telephone number and directed private, confidential financial communications intended for the Plaintiffs to the

fraudster's device.

## CAUSES OF ACTION

### COUNT I: FEDERAL COMMUNICATIONS ACT

21.   The Communications Act regulates interstate telecommunications carriers, including T-Mobile.

22.   T-Mobile is a "common carrier" and/or a "telecommunications carrier" engaged in interstate commerce by wire for the purpose of furnishing communication services. See 47 U.S.C. § 201(a).

23.   Common carriers may implement only those practices and regulations that are "just and reasonable," and practices that are "unjust or unreasonable" are unlawful. See 47 U.S.C. § 201(b).

24.   T-Mobile was required protect the Plaintiffs' confidential proprietary information. See 47 U.S.C. § 222(a).

25.   Additionally, T-Mobile was required to protect the Plaintiffs' customer proprietary network information ("CPNI"). See 47 U.S.C. § 222(c).

26.   According to the CPNI Rules, 47 C.F.R. § 64.2010(a, d), Telecommunications carriers must take reasonable measures to discover and protect against attempts to gain unauthorized access to CPNI. Telecommunications carriers must properly authenticate a customer prior to

disclosing CPNI based on customer-initiated contact, online account access, or an in-store visit. . . . .  In-store access to CPNI. A telecommunications carrier may disclose CPNI to a customer who, at a carrier's retail location, first presents to the telecommunications carrier or its agent a valid photo ID matching the customer's account information."

27.     T-Mobile violated its duties under the Communications Act by failing to engage in reasonable practices and by failing to protect Plaintiffs' confidential proprietary information and CPNI by using, disclosing, or permitting access to their confidential information, communications, and/or CPNI without the consent, notice, and/or legal authorization.

28.     T-Mobile failed to protect the confidentiality of Plaintiffs when it disclosed their confidential proprietary information and CPNI by using, disclosing, or permitting access to their confidential information, communications, and/or CPNI without the consent, notice, and/or legal authorization to third-parties without their authorization or permission.

29.     T-Mobile's conduct, as alleged herein, constitutes knowing violations of the Communications Act including sections 201(b) and 222, as well as the CPNI Rules.

30.     Had T-Mobile not allowed the unauthorized access to Plaintiffs' accounts, they would not have suffered loss.

31.     Pursuant to 47 U.S.C. § 206, Plaintiffs seek the full amount of damages sustained in consequence of such violations of the provisions of the Communications Act, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case.

## COUNT II: COMPUTER FRAUD & ABUSE ACT

32.     The Computer Fraud & Abuse Act ("CFAA") governs those who intentionally access computers without authorization or who intentionally exceed authorized access and as a result of such conduct, cause damage and loss.

33.     A cell phone is a "computer" within the meaning of the CFAA. See 18 U.S.C. § 1030(e)(1).

34.     As set forth in the CFAA, the term "exceeds authorized access" means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser [sic] is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6).

35.     As alleged herein, a SIM swap scam requires intentional access to customer computer data by T-Mobile which exceeds its authority and which conduct has caused damage and loss.

36.     T-Mobile is subject to the provisions of the CFAA.

37.    T-Mobile's conduct, as alleged herein, constitutes a knowing violation of the CFAA.

38.    T-Mobile violated the CFAA by exceeding its authority to access the computer data and breaching the confidentiality of the proprietary information of Plaintiffs by using, disclosing, or permitting access to Plaintiffs confidential information, communications and/or CPNI without the consent, notice and/or legal authorization as required by the CFAA.

39.    Pursuant to Section 1030(g) of the CFAA, Plaintiffs seek compensatory damages in an amount determined by the trier of fact, which exceeds $5,000.00.

**COUNT III: GEORGIA IDENTITY THEFT ACT**

40.    Without Plaintiffs' authorization or consent, T-Mobile used identifying information concerning Plaintiffs when it facilitated the unauthorized SIM Swap.

41.    T-Mobile received fraudulent identification information and willingly accepted it for identification purposes.

42.    T-Mobile knew the information to be fraudulent, stolen, counterfeit, or fictitious as evidenced by the prior SIM Swap and Plaintiffs' instruction that they would never authorize any SIM Swap unless made in person with photo

identification.

43.    T-Mobile's conduct in using and receiving fraudulent information to facilitate the SIM Swap was both knowing and intentional.

44.    Plaintiffs bring this action to recover general and punitive damages sustained as a consequence of T-Mobile violations of Georgia's Identity Theft Act. *See* OCGA § 16-9-130(1).

45.    Plaintiffs seek that such damage be trebled for an intentional violation. See OCGA § 16-9-130(2).

46.    Plaintiffs seek recovery of costs and a reasonable attorneys' fee. See OCGA § 16-9-130(3).

## COUNT FOUR: NEGLIGENCE

47.    T-Mobile owed a duty to Plaintiffs to exercise reasonable care in hiring, supervising, and training its officers, agents, and employees to safeguard Plaintiffs' confidential information and service and to prevent it from being compromised, lost, stolen, misused, or disclosed to unauthorized parties.

48.    T-Mobile was well aware of the harms, including financial harms, associated with SIM Swap fraud, generally, as well as the harms to Plaintiffs from the previous unauthorized SIM Swap, yet it permitted an unauthorized SIM Swap in disregard to Plaintiffs' instructions to the contrary.

49.     T-Mobile failed to take steps that a reasonably prudent carrier in T-Mobile's position would take, including but not limited to properly notating and following Plaintiffs' instructions not to allow SIM Swaps on their accounts unless facilitated in person with proper identification.

50.     Had T-Mobile appropriately hired, retained, controlled, trained, and supervised the officers, agents, and employees under its control, then such employees would not have facilitated the SIM Swap without proper identification and authorization.

51.     T-Mobile knew or should have known that such officers, agents, and employees could allow unauthorized access to customer accounts, including those of Plaintiffs.

52.     T-Mobile negligently failed to implement systems and procedures necessary to prevent its officers, agents, and employees from allowing or obtaining unauthorized access to customer accounts, including that of Plaintiffs.

53.     T-Mobile's negligence herein allowed the unauthorized access to Plaintiffs' accounts, resulting in damage to Plaintiffs that were the foreseeable result of SIM Swap fraud.

54.     Given T-Mobile's experience with account takeover and SIM swap scams, T-Mobile's failure to exercise reasonable care in screening, supervising, and controlling its officers, agents and employees was a breach of its duty to its

customers, including Plaintiffs.

55.     It was, and is, entirely foreseeable to T-Mobile that unauthorized persons would attempt to gain unauthorized access to T-Mobile customers' data and, despite this, T-Mobile failed to implement sufficient safeguards and procedures to prevent its officers, agents and employees from granting or obtaining such unauthorized access.

56.     As a direct consequence of T-Mobile's negligence in allowing the SIM Swap and in the hiring, retention, control, and supervision of its officers, agents, and employees, who enabled or obtained the unauthorized access, Plaintiffs were damaged in the loss of use of their service, the loss of use of over $50,000 from their bank account for a period of time, penalties and interest, and severe worry, distress, confusion, and marital instability while trying to undo the damages caused by the unauthorized SIM Swap and recover the lost funds.

57.     T-Mobile acted in bad faith in permitting the SIM Swap and refusing responsibility, and Plaintiffs seek the expenses of litigation, including a reasonable attorneys' fee, pursuant to OCGA § 13-6-11.


**JURY TRIAL DEMAND**

58.     Plaintiffs hereby demand a trial by jury on all issues so triable.

## DOCUMENT PRESERVATION DEMAND

59.    Plaintiffs hereby demand that Defendant take affirmative steps to preserve all telephone recordings, data, emails, other recordings, phone records, dialer records, documents and all other tangible things that relate to the allegations herein, Plaintiffs, or the facilitation of SIM Swaps, the events described herein, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim. If Defendant is aware of any third party that has possession, custody or control of any such materials, Plaintiffs demand that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of themselves and against Defendant, as follows:

A.    That Plaintiffs be awarded compensatory damages, both general and special;

B.    That Plaintiffs be awarded treble and punitive damages;

C.    That Plaintiffs be awarded the expenses of litigation, including a reasonable attorneys' fee.

D.   That Plaintiffs be awarded such additional relief as deemed just and

proper.

Respectfully submitted,

SKAAR & FEAGLE, LLP

By:   /s/ Justin T. Holcombe
        Justin T. Holcombe
        Georgia Bar No. 552100
        jholcombe@skaarandfeagle.com
        Kris Skaar
        Georgia Bar No. 649610
        kskaar@skaarandfeagle.com
        133 Mirramont Lake Drive
        Woodstock, GA 30189
        Tel:    (770) 427-5600
        Fax:   (404) 601-1855

        James M. Feagle
        Georgia Bar No. 256916
        jfeagle@skaarandfeagle.com
        Cliff R. Dorsen
        Georgia Bar No. 149254
        cdorsen@skaarandfeagle.com
        Chelsea R. Feagle
        Georgia Bar No. 110863
        cfeagle@skaarandfeagle.com
        2374 Main Street, Suite B
        Tucker, GA 30084
        Tel:    (404) 373-1970
        Fax:   (404) 601-1855